**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRED S. LEHMANN, | : |
| Plaintiff, | : CIVIL ACTION NO. 07-5964 (MLC) |
| v. | : **OPINION** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | : |
| Defendants. | : |

**COOPER**, District Judge

Plaintiff, Fred S. Lehmann, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and file the complaint.

### BACKGROUND

The allegations are taken from the complaint and accepted as true for purposes of this review. Plaintiff alleges that on August 19, 2006, he was a minimum-security inmate at Jones Farm in Trenton, New Jersey, where he was assigned the detail of working inside New Jersey State Prison in the Officers Dining Room ("ODR"). As officers entered the ODR, Plaintiff told Officer Martha Hicks that she looked like his wife. Ten minutes later, and after he had apologized for the remark, officers

handcuffed Plaintiff, took him to the Intake Area, and then beat him severely enough to fracture his eye socket. Plaintiff alleges that he offered no resistance. He states that he was beaten and kicked for at least 20-30 minutes by eight officers, including Officer Wise. Plaintiff states that he was in "massive pain" and thought he was going to die.

Plaintiff was taken to the medical area of New Jersey State Prison, where he received preliminary medical treatment and an official of the Special Investigations Division of Internal Affairs took photographs of him. He was then transported to St. Francis Medical Center where he underwent a CT scan and treatment by an eye specialist. After eight hours, Plaintiff was transported to the Central Reception and Assignment Facility, where he was placed in the infirmary for 5 days. Plaintiff alleges that he was in pain but that he received only Motrin for headaches. Plaintiff was then placed in "lock up," where he spent 8 days in 24-hour lockdown.

Due to the incident at the ODR, Plaintiff was charged with: (1) threatening an officer, (2) assaulting an officer, and (3) disrupting the routine operation of a correctional facility. Following a disciplinary hearing, he was found guilty of the violations and sentenced to two years in administrative segregation, two years loss of commutation time, 30 days detention, and 30 days loss of recreation. On appeal, the

2

sanctions were reduced to one year in administrative segregation, 60 days suspended, 30 days loss of recreation, and a one-year loss of commutation time.  Plaintiff alleges that these charges were an attempt to "cover up" an assault by corrections officers.

Plaintiff alleges that he now suffers from anxiety, nightmares, massive headaches, loss of vision, permanent disfigurement, stress, and depression.

Plaintiff names the following defendants: New Jersey Department of Corrections, Central Reception and Assignment Facility, CRAF Administrator Bruce A. Hauck, New Jersey State Prison Associate Administrator Michelle Ricci, Jones Farm Administration, Special Investigations Division of New Jersey State Prison, Internal Affairs of New Jersey State Prison, and Officers PHD, McClish, Smenfred, Moleta, Hicks, Branca, Worleon, Wise, Moon, Smondee, Eva Reque, and Sgt. Wilson.  Plaintiff seeks monetary damages, restoration of his full-minimum status, and restoration of his lost commutation time.

## STANDARDS FOR A SUA SPONTE DISMISSAL

The Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought as to prison conditions).  In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  See Morse, 132 F.3d at 906 (court need not

4

credit pro se plaintiff's "bald assertions" or "legal conclusions").

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 453 (3d Cir. 1996).

### SECTION 1983 ACTIONS

A plaintiff may have a cause of action under Section 1983 for certain violations of constitutional rights.  To state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors cannot be liable under Section 1983 solely on a theory of respondeat superior. See City of Okla. City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" at issue); Natale v. Camden County Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pitt., 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).[1]

A Section 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity

---

[1] It appears that the claims asserted against CRAF Administrator Hauck and New Jersey State Prison Associate Administrator Ricci are based solely upon a theory of respondeat superior liability. Accordingly, all claims against these defendants will be dismissed.

6

action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotes and cites omitted).

## ANALYSIS

### I.   Claims Against Governmental Entities

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." Generally, a suit by private parties seeking a damages award that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless that immunity is waived by that state or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Also, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Graham, 473 U.S. at 169. Section 1983

does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

States, governmental entities that are considered arms of the state for Eleventh Amendment purposes, and state officers sued in their official capacities for money damages are not persons within the meaning of Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70-71 & n.10 (1989); Grabow v. S. State Corr. Fac., 726 F.Supp. 537, 538-39 (D.N.J. 1989) (New Jersey Department of Corrections not a person under § 1983).

For the foregoing reasons, all claims against the New Jersey Department of Corrections, the Central Reception and Assignment Facility, Jones Farm Administration, New Jersey State Prison Special Investigations Division, and New Jersey State Prison Internal Affairs,[2] and all damages claims against the defendants in their official capacities, must be dismissed with prejudice.

**II. False Disciplinary Charges and Related Due Process Claims**

Plaintiff's damages claims based upon due process violations in connection with allegedly false disciplinary charges and procedurally-defective disciplinary hearings, that took the form

---

[2] To the extent Plaintiff intended to assert claims against unnamed individuals within these entities, the only conceivable claims raised include a claim arising out of false disciplinary charges and procedural defects in the disciplinary proceedings (the "cover up"), or a claim under the Eighth Amendment for failure to protect, based on the assignment to work in the ODR, both of which would be subject to dismissal on other grounds, see infra.

8

of a "cover up," are not ripe until such time as the disciplinary proceedings have been invalidated through habeas corpus or some other means.

In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C.§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners deprived of good-conduct-time credits by a state corrections department as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

Heck v. Humphrey, 512 U.S. 477 (1994), addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of a conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

9

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further directed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

<u>Edwards v. Balisok</u>, 510 U.S. 641 (1997), applied the <u>Preiser</u> and <u>Heck</u> holdings to a state prisoner action seeking compensatory

10

and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, i.e., the disciplinary finding and punishment.  520 U.S. at 646-8.

As the challenged disciplinary charges and hearings resulted in a loss of commutation time, the damages claim cannot proceed until such time as the disciplinary finding is invalidated through habeas corpus or some other appropriate means.  These claims will be dismissed without prejudice.

Plaintiff also fails to state a claim to the extent he seeks to assert a claim based solely upon the New Jersey State Prison's Special Investigation Division and Internal Affairs failure to investigate the incident and exonerate him, unrelated to the disciplinary proceeding and sanction.  "'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 68 Fed.Appx. 378 (3d Cir. 2003) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)).  Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416 (3d Cir.

2005) (prisoners do not have constitutionally protected right to prison grievance process); Lewis v. Williams, 2006 WL 538546, at *7 (D. Del. 2006) (failure to investigate grievance does not raise constitutional issue) (collecting cases).  The claim for failure to investigate will be dismissed with prejudice.

### III. Eighth Amendment Failure to Protect Claim

Plaintiff claims that the Central Reception and Assignment Facility and the Jones Farm Administration "should have foreseen the dangers" inherent in assigning Plaintiff, a full minimum custody prisoner, to work in the Officers Dining Room inside the maximum security New Jersey State Prison.

The Eighth Amendment to the United States Constitution, applicable to each state through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of [others]." Farmer, 511 U.S. at 833 (1994) (internal quotes omitted).  "Being violently assaulted in prison is simply 'not part of the penalty

that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

An inmate must satisfy both the objective and subjective components of a claim for violation of the Eighth Amendment. The inmate must allege a deprivation that was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, it must be shown that the inmate is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety. Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due

13

care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Id. at 834.

Under Farmer, the first question is whether Plaintiff has alleged facts showing that inmates, or Plaintiff in particular, faced a substantial risk of assault from officers at New Jersey State Prison.  The second question is whether Plaintiff has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.

Plaintiff does not allege facts suggesting that defendants were informed of a specific risk of harm, from corrections officers at New Jersey State Prison, to himself or other inmates, Nami, 82 F.3d at 67-68; Young, 960 F.2d at 362, or that "a substantial risk of ... attacks was longstanding, pervasive, well-documented" or otherwise obvious to them.  Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997). Plaintiff does not allege facts that could give rise even to an inference of negligence, which in any event would be insufficient to establish a violation of the Eighth Amendment. Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by assault, is not deprivation of right); see Schwartz v. County of Montgomery, 843 F.Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating

corrections officers' failure to observe institutional policies regarding supervision of dangerous inmates constitutes negligence, which cannot support § 1983 action for violation of the Eighth or Fourteenth Amendments).

For all the foregoing reasons, the complaint fails to state an Eighth Amendment failure-to-protect claim.

### IV. Excessive Force Claim

An Eighth Amendment claim has an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson, 501 U.S. at 298. The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotes, emphasis, and cites omitted)). What is necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm.

15

Whitley v. Albers, 475 U.S. 312, 320-21 (1986)  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Hudson, 503 U.S. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding blows causing bruises, swelling, loosened teeth, and cracked dental plate were not de minimis under Eighth Amendment).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).  Thus, not all use of force is "excessive," the level of a constitutional violation.

But a "corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, ... a corrections officer can not escape liability

16

by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." Smith v. Mensinger, 293 F.3d 641, 640 (3d Cir. 2002).

Plaintiff's Eighth Amendment "excessive force" claim is sufficient to proceed past this screening stage as against defendants PHD, McClish, Smenfred, Moleta, Hicks, Branca, Worleon, Wise, Moon, Smondee, Eva Reque, and Sgt. Wilson.[3]

## CONCLUSION

The Eighth Amendment excessive-force claim may proceed as against Defendants PHD, McClish, Smenfred, Moleta, Hicks, Branca, Worleon, Wise, Moon, Smondee, Eva Reque, and Sgt. Wilson.  All other claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated**: February 25, 2008

---

[3] Plaintiff alleges that each of the twelve individual officers named as defendants participated in either the beating or the "cover up."  To the extent Plaintiff seeks to proceed against any of these twelve officer defendants on any basis other than the use of excessive force in violation of the Eighth Amendment, this Court has held that no such claims can proceed at this time.  If more facts are necessary to resolve any ambiguity or vagueness, the parties may avail themselves of the civil discovery mechanisms or a motion for more definite statement under Fed.R.Civ.P. 12(e).  See Alston v. Parker, 363 F.3d 229, 233-34 & n.6, 7 (3d Cir. 2004).